# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

___

SHEILA W.,

                      Plaintiff,

    v.                                                 5:21-CV-211 (ATB)

COMMISSIONER OF SOCIAL SECURITY,

                      Defendant.

___

JUSTIN GOLDSTEIN, ESQ., for Plaintiff
MICHAEL L. HENRY, Special Asst. U.S. Attorney for Defendant

ANDREW T. BAXTER, U.S. Magistrate Judge

## MEMORANDUM-DECISION and ORDER

This matter was referred to me, for all proceedings and entry of a final judgment, pursuant to the Social Security Pilot Program, N.D.N.Y. General Order No. 18, and in accordance with the provisions of 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, N.D.N.Y. Local Rule 73.1, and the consent of the parties. (Dkt. Nos. 4, 5).

## I.    PROCEDURAL HISTORY

On June 15, 2018, plaintiff filed an application for Supplemental Security Income ("SSI"), alleging disability beginning on the same date. (Administrative Transcript ("T") 163-166). Plaintiff's application was denied initially on November 20, 2018. (T. 58-68, 85-88). Administrative Law Judge ("ALJ") Laureen Penn granted plaintiff's request for a hearing, scheduled for April 7, 2020. (T. 125). Plaintiff participated in that telephonic conference without counsel or other representation. (T. 14-27). The ALJ advised plaintiff of her right to representation and granted plaintiff's

request for an adjournment to allow her an opportunity to obtain representation and contact treating sources for recent medical records. (T. 19-22).

On September 14, 2020, the ALJ held the rescheduled hearing by telephone, with plaintiff's consent. (T. 28-57). Plaintiff appeared with a non-attorney representative. (T. 30-31). The ALJ heard the testimony of plaintiff and vocational expert ("VE") Mark J. Tasso. (T. 33-56). On September 28, 2020, the ALJ issued an order denying plaintiff's claim. (T. 69-84). The ALJ's decision became the Commissioner's final decision when the Appeals Council denied plaintiff's request for review on December 28, 2020. (T. 1-7).

## II.　GENERALLY APPLICABLE LAW

### A.　Disability Standard

To be considered disabled, a plaintiff seeking disability insurance benefits or SSI disability benefits must establish that she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ." 42 U.S.C. § 1382c(a)(3)(A). In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner uses a five-step process, set forth in 20 C.F.R. sections

404.1520 and 416.920, to evaluate disability insurance and SSI disability claims.

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which meets or equals the criteria of an impairment listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience . . . . Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant can perform.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *see* 20 C.F.R. §§ 404.1520, 416.920. The plaintiff has the burden of establishing disability at the first four steps. However, if the plaintiff establishes that her impairment prevents her from performing her past work, the burden then shifts to the Commissioner to prove the final step. *Id.*

### B.  Scope of Review

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supported the decision. *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013); *Brault v. Soc. Sec. Admin, Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012); 42 U.S.C. § 405(g)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). It must be "more than a scintilla" of evidence scattered throughout the administrative record. *Id.* However, this standard is a very deferential standard of

review " – even more so than the 'clearly erroneous standard.'" *Brault*, 683 F.3d at 448.  "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams on behalf of Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).  However, a reviewing court may not substitute its interpretation of the administrative record for that of the Commissioner, if the record contains substantial support for the ALJ's decision.  *Id*.  *See also Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

An ALJ is not required to explicitly analyze every piece of conflicting evidence in the record.  *See, e.g., Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983); *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981) (we are unwilling to require an ALJ explicitly to reconcile every conflicting shred of medical testimony).  However, the ALJ cannot "'pick and choose' evidence in the record that supports his conclusions." *Cruz v. Barnhart*, 343 F. Supp. 2d 218, 224 (S.D.N.Y. 2004); *Fuller v. Astrue*, No. 09-CV-6279, 2010 WL 5072112, at *6 (W.D.N.Y. Dec. 6, 2010).

## III.  FACTS

Plaintiff was 47 years old on the date of her SSI application. (T. 34, 163).  She attended regular education classes as a student but left school in the tenth grade. (T. 34, 517).  She subsequently obtained her GED. (*Id.*)  At the time of her December 2020 hearing, plaintiff was residing in an apartment with her nine-year-old daughter. (T. 16, 39).  She also has several adult children. (T. 682).  Plaintiff has a very limited employment history, and has not worked since leaving a home health aide position after

two months in 2003. (T. 175-178, 517).

Plaintiff did not allege any physical impairments in her application for benefits, and confirmed at her administrative hearing that she was alleging disability solely due to mental impairments. (T. 34-35, 184). She traced her mental health symptoms to trauma and abuse as a child and adult. (T. 518). She had never been hospitalized for mental health issues, but had received weekly or biweekly outpatient counseling since at least 2012, and was regularly prescribed psychiatric medication. (T. 49-50, 517-518, 682-684). Plaintiff testified that her psychiatric symptoms caused panic attacks, often led her to isolate in her apartment, and made it difficult to communicate with others. (T. 43-44, 518). According to her testimony, she relied on a social services case manager to help her schedule medical appointments, arrange transportation, and perform other tasks related to her health and childcare. (T. 22-24).

The parties' briefs and the ALJ's decision provide further discussion of the medical and other evidence of record. (T. 75-79). Rather than reciting this evidence at the outset, the court will discuss the relevant details below, as necessary to address the issues raised by plaintiff.

## IV. THE ALJ'S DECISION

After reviewing the procedural history of plaintiff's application and stating the applicable law, the ALJ found that plaintiff had not engaged in substantial gainful activity ("SGA") since her application date of June 15, 2018. (T. 74). At step two of the sequential evaluation, the ALJ found that plaintiff's depression, anxiety, and post-traumatic stress disorder ("PTSD") were severe impairments. (*Id.*) At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that

5

met or medically equaled the severity of a Listed Impairment.  (T. 75-76).  As part of this analysis, the ALJ considered the criteria for Listings 12.04 (Depressive, Bipolar, and Related Disorders), 12.06 (Anxiety and Obsessive-Compulsive Disorders), and 12.15 (Trauma and Stressor-Related Disorders). (T. 75).

At step four, the ALJ found that plaintiff had the RFC to perform a full range of work at all exertional levels, but with certain nonexertional limitations, namely:

> the claimant can understand, remember, and carry out short, simple instructions; she can sustain attention and concentration for up to two hours at a time while performing simple, routine, and repetitive tasks, but she cannot perform at production rate pace, so she can have no assembly line production work; she can occasionally interact with supervisors, coworkers, and the public; and she can adapt to occasional changes in the workplace.

(T. 76).

In making the RFC determination, the ALJ stated that she considered all of plaintiff's symptoms, and the extent to which those symptoms could "reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 C.F.R. 416.929" and Social Security Ruling ("SSR") 16-3p. (*Id*.)  The ALJ further stated that she considered opinion evidence and prior administrative medical findings pursuant to 20 C.F.R. § 416.920c. (*Id*.)  The ALJ also found that plaintiff's medically determinable impairments could reasonably be expected to produce some of her alleged symptoms, but that plaintiff's statements regarding the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the medical evidence and other evidence in the record. (T. 77).

Next, the ALJ found that plaintiff had no past relevant work. (T. 79).  The ALJ then evaluated the VE testimony, and found that "[c]onsidering the [plaintiff]'s age,

education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy" that plaintiff can perform. (T. 79-80). Accordingly, the ALJ determined that plaintiff was not disabled from her application date of June 15, 2018 through the date of the ALJ's decision. (T. 80).

## V.    ISSUES IN CONTENTION

Plaintiff raises three arguments:

1. The ALJ failed to fully develop the record because she did not acknowledge and make efforts to correct a treating source opinion and mental status examination notes that were missing one or more pages. (Plaintiff's Brief ("Pl.'s Br.") at 20-24) (Dkt. No. 18).

2. The ALJ failed to properly evaluate the medical opinion evidence, resulting in an RFC that was not supported by substantial evidence. (Pl.'s Br. at 7-20).

3. The ALJ improperly considered a period of noncompliance with plaintiff's psychiatric treatment and medication regimen without also considering the reasons for that noncompliance. (Pl.'s Br. at 24-25).

Defendant contends that the Commissioner's determination should be affirmed because it was supported by substantial evidence and free of error warranting a remand. (Defendant's Brief ("Def.'s Br.") at 11-27) (Dkt. No. 19).

For the reasons set forth below, the court concludes that the ALJ failed to fully develop the record because she did not attempt to obtain a full copy of the only treating source mental health opinion in the record, and based her decision, in part, on incomplete mental status examination notes from the same treating source. As a result, the ALJ's evaluation of the medical opinion evidence, the step three and four determinations, and the ultimate finding that plaintiff was not disabled were tainted. Therefore, this court orders a remand for further administrative proceedings to

adequately develop the record, evaluate the persuasiveness of the medical opinion evidence, and reach an RFC determination that is supported by substantial evidence.

## DISCUSSION

### VI.   RFC/EVALUATING MEDICAL EVIDENCE/DEVELOPING RECORD

#### A.   Legal Standards

##### 1.   RFC

RFC is "what [the] individual can still do despite his or her limitations. Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis. . . ." A "regular and continuing basis" means eight hours a day, for five days a week, or an equivalent work schedule. *Balles v. Astrue*, No. 3:11-CV-1386 (MAD), 2013 WL 252970, at *2 (N.D.N.Y. Jan. 23, 2013) (citing *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 96–8p, 1996 WL 374184, at *2)); *Babcock v. Berryhill,* No. 5:17-CV-00580 (BKS), 2018 WL 4347795, at *12-13 (N.D.N.Y. Sept. 12, 2018); *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 33 (2d Cir. 2013); *Stephens v. Colvin*, 200 F. Supp. 3d 349, 361 (N.D.N.Y. 2016).

In rendering an RFC determination, the ALJ must consider objective medical facts, diagnoses, and medical opinions based on such facts, as well as a plaintiff's subjective symptoms, including pain and descriptions of other limitations. 20 C.F.R. §§ 404.1545, 416.945. *See Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999) (citing *LaPorta v. Bowen*, 737 F. Supp. 180, 183 (N.D.N.Y. 1990)); *Kirah D. v. Berryhill*, No. 3:18-CV-0110 (CFH), 2019 WL 587459, at *8 (N.D.N.Y. Feb 13, 2019); *Genier v. Astrue,* 606 F.3d 46, 49 (2d Cir. 2010). An ALJ must specify the functions

plaintiff is capable of performing, and may not simply make conclusory statements regarding a plaintiff's capacities. *Roat v. Barnhart*, 717 F. Supp. 2d 241, 267 (N.D.N.Y. 2010); *Martone v. Apfel*, 70 F. Supp. 2d at 150 (citing *Ferraris v. Heckler*, 728 F.2d 582, 588 (2d Cir. 1984); *LaPorta v. Bowen*, 737 F. Supp. at 183, *Stephens v. Colvin,* 200 F. Supp. 3d 349, 361 (N.D.N.Y. 2016); *Whittaker v. Comm'r of Soc. Sec.*, 307 F. Supp. 2d 430, 440 (N.D.N.Y. 2004). The RFC assessment must also include a narrative discussion, describing how the evidence supports the ALJ's conclusions, citing specific medical facts, and non-medical evidence. *Natashia R. v. Berryhill*, No. 3:17-CV-01266 (TWD), 2019 WL 1260049, at *11 (N.D.N.Y. Mar. 19, 2019) (citing SSR 96-8p, 1996 WL 374184, at *7).

## 2.     Evaluation of Medical Opinion Evidence

The regulations regarding the evaluation of medical evidence have been amended for claims filed after March 27, 2017, and several of the prior Social Security Rulings, including SSR 96-2p, have been rescinded. According to the new regulations, the Commissioner "will no longer give any specific evidentiary weight to medical opinions; this includes giving controlling weight to any medical opinion." *Revisions to Rules Regarding the Evaluation of Medical Evidence* ("*Revisions to Rules*"), 2017 WL 168819, 82 Fed. Reg. 5844, at 5867–68 (Jan. 18, 2017), *see* 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, the Commissioner must consider all medical opinions and "evaluate their persuasiveness" based on the following five factors: supportability; consistency; relationship with the claimant; specialization; and "other factors." 20 C.F.R. §§ 404.1520c(a)-(c), 416.920c(a)-(c).

Although the new regulations eliminate the perceived hierarchy of medical

9

sources, deference to specific medical opinions, and assigning "weight" to a medical opinion, the ALJ must still "articulate how [he or she] considered the medical opinions" and "how persuasive [he or she] find[s] all of the medical opinions." *Id.* at §§ 404.1520c(a) and (b)(1), 416.920c(a) and (b)(1). The two "most important factors for determining the persuasiveness of medical opinions are consistency and supportability," which are the "same factors" that formed the foundation of the treating source rule. *Revisions to Rules*, 82 Fed. Reg. 5844-01 at 5853. An ALJ is specifically required to "explain how [he or she] considered the supportability and consistency factors" for a medical opinion. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). With respect to "supportability," the new regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id.* at §§ 404.1520c(c)(1), 416.920c(c)(1). The regulations provide that with respect to "consistency," "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* at §§ 404.1520c(c)(2), 416.920c(c)(2).

Under the new regulations an ALJ must consider, but need not explicitly discuss, the three remaining factors in determining the persuasiveness of a medical source's opinion. *Id.* at §§ 404.1520c(b)(2), 416.920c(b)(2). However, where the ALJ has found two or more medical opinions to be equally well supported and consistent with the record, but not exactly the same, the ALJ must articulate how he or she considered

those factors contained in paragraphs (c)(3) through (c)(5). *Id.* at §§ 404.1520c(b)(3), 416.920c(b)(3).

### 3. Duty to Develop the Record

Given the remedial intent of the Social Security statute and the non-adversarial nature of benefits proceedings, an ALJ has an affirmative duty, regardless of whether the claimant is represented by counsel, to develop the medical record if it is incomplete. *Tejada v. Apfel*, 167 F.3d 770, 774 (2d Cir. 1999); 20 C.F.R. §§ 404.1512 (d), 416.912(d) ("We will make every reasonable effort to help you get medical reports from your own medical sources when you give us permission to request the reports."); *see also Vincent v. Comm'r of Soc. Sec.*, 651 F.3d 299, 305 (2d Cir. 2011) ("The duty of the ALJ, unlike that of a judge at trial, is to investigate and develop the facts and develop the arguments both for and against the granting of benefits."). "This entails a heightened obligation to ensure both the completeness and the fairness of the administrative hearing." *Id.* (citing *Cullinane v. Sec. of Dep't of Health and Human Services of U.S.*, 728 F.2d 137, 137 (2d Cir. 1984) (describing an ALJ's "affirmative duty to ensure that pro se disability insurance benefit claimants receive full and fair hearings")). Moreover, "[t]he ALJ's duty to develop the record is enhanced when the disability in question is a psychiatric impairment." *Tammy H. v. Comm'r of Soc. Sec.*, No. 5:18-CV-851(ATB), 2019 WL 4142639, at *10 (N.D.N.Y. Aug. 30, 2019) (quoting *Champion v. Berryhill*, No. 16-CV-4723, 2017 WL 4404473, at *16 (S.D.N.Y. Sept. 14, 2017) (other citations omitted)).

In furtherance of the duty to develop the record, an ALJ may re-contact medical sources if the evidence received from the treating physician or other medical sources is

11

inadequate to determine disability and additional information is needed to reach a determination. 20 C.F.R. §§ 404.1512(e), 416.912(e). Although the ALJ must attempt to fill in any obvious gaps in the administrative record, "where the record evidence is sufficient for the ALJ to make a disability determination, the ALJ is not obligated to seek further medical records." *Jaeger-Feathers v. Berryhill*, No. 1:17-CV-06350, 2019 WL 666949, at *3 (W.D.N.Y. Feb. 19, 2019) (quoting *Johnson v. Comm'r of Soc. Sec.*, No. 1:17-CV-06350, 2018 WL 1428251, at *5 (W.D.N.Y. Mar. 22, 2018)).

### B. Application

#### 1. The ALJ Failed to Properly Develop the Record.

The record includes a single page addressed to Licensed Master Social Worker ("LMSW") Kathleen Pollard with a heading of "Medical Source Statement." (T. 770). Plaintiff saw LMSW Pollard for regular therapy sessions since at least June 2018. (T. 22, 249). Someone, presumably LMSW Pollard, filled out the form by hand. (*Id.*) It describes weekly contact with plaintiff and lists plaintiff's diagnosed impairments as PTSD, mood disorder, depression, anxiety, and delusional paranoia. (*Id.*) Plaintiff's prognosis is listed as "poor-fair." (*Id.*) The remainder of the form utilizes a traditional check-box format, and identifies plaintiff's symptoms as including "decreased energy," "feelings of guilt or worthlessness," "generalized persistent anxiety," "mood disturbance," "paranoid thinking or inappropriate suspiciousness," "emotional withdrawal or isolation," "emotional lability," "manic syndrome," "deeply ingrained, maladaptive patterns of behavior," "persistent disturbances of mood or affect," and "memory impairment-short, intermediate or long term." (*Id.*) The page is undated and has no signature line. (*Id.*)

The Commissioner contends that the ALJ "had no reason to assume that pages were missing from Ms. Pollard's questionnaire, which Ms. Pollard faxed directly to Plaintiff's representative" because the document does not contain "cut-off words or skipped page numbers." (Def. Br. at 21-22). This court rejects this argument. A Medical Source Statement would ordinarily be expected to include a signature page and an opportunity for the treating source to opine on an individual's functional limitations. For example, the commonly used Social Security Administration Office of Disability Adjudication and Review Form HHA-1152-U3, entitled "Medical Source Statement of Ability to Do Work-Related Activities (Mental)" is a three page document[1] that requests a medical source's signed and dated opinion of an individual's functional limitations impacting work-related mental activities on a scale of "none" to "extreme." The form addresses a number of functional areas including understanding, remembering and carrying out instructions and social interaction. Given the typical content of such reports, the ALJ should have noticed that a document containing the bold heading "Medical Source Statement" only listed plaintiff's diagnoses and symptoms, was unsigned, and did not address any of plaintiff's functional limitations. *Ransom v. Comm'r of Soc. Sec.*, No. 1:19-CV-96 (EAW), 2020 WL 2833003, at *3 (W.D.N.Y. June 1, 2020) (incomplete and unsigned medical source statement created a clear gap in the record that the ALJ should have filled). In this situation, the ALJ had an obligation to attempt to obtain the full Medical Source Statement.

By the Commissioner's own professed standards, the ALJ should have also

---

[1] The version of Form HA-1152-U3 currently approved by the Social Security Administration is available at https://www.reginfo.gov/public/do/DownloadDocument?objectID=28849501 .

noticed defects in the treatment notes transmitted by LMSW Pollard, because they did contain cut-off words and skipped page numbers. The first treatment note summarizes a mental status examination performed on July 9, 2019, but only includes part of LMSW Pollard's findings. (T. 771). Specifically, the available portion of the July 2019 mental status examination states:

> Emotionally the patient appeared anxious and worried. Attitude in the interview consisted of cooperation. The patient presented with a fast speaking rate. Language skills were within normal limits. The patient correctly named objects. Mood was agitated, depressed and fearful and her affect was anxious and depressed. The patient's thought process contained loose associations and her Judgement was normal. The patient appears to be aware of their present condition. The patient had normal recent and remote memory. Fund of

(T. 771). The record, which is numbered "Page 1 of 2" abruptly cuts off in the middle of a sentence and the following page is a new treatment note summarizing plaintiff's visit on December 18, 2019. (T. 771-772). Although the reason for the gap in plaintiff's records is not dispositive, the court notes that the record includes a fax cover sheet for LMSW Pollard's records. (T. 769). It appears likely that the original documents were printed double-sided, but only one side was faxed to plaintiff's representative. It is unclear if other treatment notes, some of which appear to be duplicates, were similarly affected by this transmittal error. (T. 776-808).

The ALJ did not recognize LMSW Pollard's Medical Source Statement as a medical opinion, and thus did not evaluate its persuasiveness. (T. 78). She made general reference to LMSW Pollard's provided treatment notes but found "the therapist did not make significant detailed findings or provide much detail on each visit beyond checkbox subjective reports similar to previous visits." (*Id.*) The ALJ did not discuss the partial

results of the July 2019 mental status examination performed by LMSW Pollard.

Whether the ALJ has satisfied her duty to develop the record is a threshold question. *Matthew D. v. Comm'r of Soc. Sec.*, No. 5:20-CV-793 (TJM); 2021 WL 1439669, at *6 (N.D.N.Y. April 16, 2021). Before determining whether the Commissioner's final decision is supported by substantial evidence under 42 U.S.C. § 405(g), "the court must first be satisfied that the ALJ provided plaintiff with 'a full hearing under the Secretary's regulations' and also fully and completely developed the administrative record." *Scott v. Astrue*, No. 09-CV-3999 (KAM) (RLM), 2010 WL 2736879, at *12 (E.D.N.Y. July 9, 2010) (quoting *Echevarria v. Sec'y of Health & Human Servs.*, 685 F.2d 751, 755 (2d Cir. 1982)); *see also Rodriguez ex rel. Silverio v. Barnhart*, No. 02-CV-5782 (FB), 2003 WL 22709204, at *3 (E.D.N.Y. Nov. 7, 2003) ("The responsibility of an ALJ to fully develop the record is a bedrock principle of Social Security law.") (citing *Brown v. Apfel*, 174 F.3d 59 (2d Cir. 1999)). Remand is appropriate where this duty is not discharged. *Matthew D.*, 2021 WL 1439669, at *6; *see also Moran v. Astrue*, 569 F.3d 108, 114-15 (2d Cir. 2009) ("We vacate not because the ALJ's decision was not supported by substantial evidence but because the ALJ should have developed a more comprehensive record before making his decision.").

To satisfy the duty to develop the record, "an ALJ should have medical evidence from a medical source with a sufficiently persuasive opinion noting the existence and severity of a disability." *See Jackson v. Kijakazi*, No. 20-CV-7476 (JLC); 2022 WL 620046, at *17 (S.D.N.Y. March 3, 2022) (citation omitted). When an ALJ's RFC determination is challenged by a plaintiff, a reviewing court"s "decision not to remand assumes that there are no obvious gaps in the record precluding the ALJ from properly

15

assessing the claimant's residual functional capacity." *Newton v. Berryhill*, No. 18-CV-1244 (MPS), 2019 WL 4686594, at *2 (D. Conn. Sept. 26, 2019) (quoting *Downes v. Colvin*, No. 14-CV-7147 (JLC), 2015 WL 4481088, at *15 (S.D.N.Y. July 22, 2015)); *see also Eusepi v. Colvin*, 595 F. App'x 7, 9 (2d Cir. 2014) (ALJ required to seek out additional evidence when there are "obvious gaps" in administrative record).

The incomplete Medical Source Statement from LMSW Kathy Pollard and the incomplete treatment notes that exclude part of a July 2019 Mental Status Examination create an obvious gap in the record. *See Martinez v. Saul*, No. 3:19-CV-1017 (TOF), 2020 WL 6440950, at *4-5 (D. Conn. November 3, 2020) (incomplete medical opinion and missing hospitalization records create an obvious gap in the record); *Ransom*, 2020 WL 2833003, at *3 (W.D.N.Y. June 1, 2020) (remanding where Medical Source Statement that was more restrictive than ALJ's RFC determination appeared to be missing a page); *Browne v. Comm'r of Soc. Sec.*, No. 18-CV-11175 (GBD) (KNF), 2020 WL 420317, at *6 (S.D.N.Y. January 8, 2020) (remanding where ALJ failed to notice that Medical Source Statement and associated hospital records were missing pages).

This court cannot find the ALJ's failure to seek complete copies of these treating source records to be harmless, because it necessarily impacted the ALJ's evaluation of the medical opinion evidence. Even under the amended regulations governing medical opinion evidence, district courts in the Second Circuit recognize the "foundational nature" of direct observation of a patient, and "consistency with those observations" is a factor in evaluating the value of a medical opinion. *Shawn H. v. Comm'r of Soc. Sec.*, No. 2:19-CV-113, 2020 WL 3969879, at *8 (D. Vermont July 14, 2020). The importance of the longitudinal record is paramount in cases involving psychiatric

impairments. "Mental health patients have good days and bad days; they 'may respond to different stressors that are not always active.'" *Pagan v. Saul*, No. 18-CV-7012 (JGK), 2020 WL 2793023, at *6 (S.D.N.Y. May 29, 2020) (citation omitted). "Cycles of improvement and debilitating symptoms [of mental illness] are a common occurrence, and in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working." *Estrella v. Berryhill*, 925 F.3d 90, 97 (2d Cir. 2019) (citations omitted).

Due to the incomplete record, the ALJ evaluated the persuasiveness of opinions based on a one-time consultative psychiatric examination and a non-examining state agency consultant's review, without the benefit of a full treating source opinion or a recent mental status examination from a treating source. (T. 78-79). Courts within the Second Circuit have long recognized that a longitudinal understanding of an individual's mental impairments "cannot be readily achieved by a single consultative examination." *Arias v. Kijakazi*, No. 21-CV-3118 (RWL), 2022 WL 3646003, at *5 (S.D.N.Y. August 24, 2022); see also *Estrella*, 925 F.3d at 98 ("a one-time snapshot of a claimant's status may not be indicative of her longitudinal mental health"). The same difficulty exists with reliance on a non-examining consultant. As the amended regulations note, "[a] medical source may have a better understanding of your impairment(s) if he or she examines you than if the medical source only reviews evidence in your folder." *See* 20 C.F.R. §§ 404.1520c(c)(3)(v), 416.920c(c)(3)(v).

This court recognizes that the ALJ did make some efforts to develop the record. At plaintiff's first administrative hearing in April 2020, the ALJ noted the lack of recent

17

medical records and questioned plaintiff regarding her treatment providers, including LMSW Pollard. (T. 18-25). After this brief questioning, the ALJ postponed the hearing so that plaintiff could seek representation. (T. 25-27).

Plaintiff is represented by legal counsel in this proceeding, but was represented by a non-attorney during the second administrative hearing in September 2020. (T. 154-157). The ALJ questioned this representative regarding the accuracy of the record, and relied upon this representative's confirmation that the record was complete.[2] (T. 33). The same representative submitted plaintiff's administrative appeal, and did not challenge the ALJ's development of the record. (T. 160-162). The Commissioner thus argues, not unreasonably, that this representative bears some responsibility for the defects in the record.[3] This court agrees with that assessment, but finds that remand is still necessary. The representative's inaccurate characterization of the record does not eliminate the ALJ's own obligation to develop the record. *See Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir. 1996) ("It is the rule in our circuit that 'the ALJ, unlike a judge in a trial, must himself affirmatively develop the record' . . . ." (quoting *Echevarria*, 685 F.2d at 755)); *Harris v. Colvin*, No. 11-CV-1497, 2013 WL 5278718, at *7-8 (N.D.N.Y. Sept. 18, 2013) (noting "with frustration" the claimant's counsel's failure to provide documents as promised, but nevertheless concluding that "the ALJ's reliance on

---

[2] The hearing transcript sets out a straightforward colloquy. The ALJ asked "Is the record complete with all relevant evidence?" Plaintiff's representative responded, "Yes, it is, Judge." (T. 33).

[3] Plaintiff's legal counsel in this proceeding was not involved at the administrative level. However, the court notes that plaintiff's counsel could have aided my decision in this proceeding by obtaining and filing a complete copy of LMSW Pollard's records with the court. A case may be remanded to the Commissioner for reconsideration based on new evidence first submitted to the district court if the plaintiff is able to show that the new evidence "is material and that there [wa]s good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g).

claimant's counsel to obtain the treating physician records was inadequate.").

It is possible that the addition of the missing records will not change the ALJ's disability determination. It is equally possible that LMSW Pollard's records would have been unavailable had the ALJ made an effort to obtain them. However, because this court is unable to determine that the ALJ would have reached the same disability determination had she made appropriate attempts to obtain and review the missing pages, remand for further administrative proceedings remains the necessary remedy.

### 2. The Court Declines to Address Plaintiff's Remaining Arguments.

Plaintiff has challenged other portions of the ALJ's decision, including the step three determination, the evaluation of the other opinion evidence, and the impact of plaintiff's noncompliance with treatment. (Pl.'s Br. at 7-25). As discussed above, the full development of the administrative record on remand will necessary impact the remainder of the ALJ's decision, including those issues raised by plaintiff. Therefore, this court declines to address plaintiff's remaining arguments. *See, e.g., Bell v. Colvin*, No. 5:15-CV-01160 (LEK), 2016 WL 7017395, at *10 (N.D.N.Y. Dec. 1, 2016) (declining to reach arguments "devoted to the question whether substantial evidence supports various determinations made by [the] ALJ" after the court had already determined remand was warranted); *Morales v. Colvin*, No. 13-CV-6844 (LGS) (DF), 2015 WL 2137776, at *28 (S.D.N.Y. May 4, 2015) (the court need not reach additional arguments regarding the ALJ's factual determinations "given that the ALJ's analysis may change on these points upon remand").

**WHEREFORE**, based on the findings above, it is

**ORDERED**, that the decision of the Commissioner be **REVERSED** and this case

**REMANDED**, pursuant to sentence four of 42 U.S.C. § 405(g), for completion of the record, a proper evaluation of the medical and other evidence, an appropriate determination of plaintiff's residual functional capacity, and other further proceedings, consistent with this Memorandum-Decision and Order, and it is

**ORDERED**, that the Clerk enter judgment for **PLAINTIFF**.

Dated: August 30, 2022

_Andrew T. Baxter_
Andrew T. Baxter
U.S. Magistrate Judge